UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Versatrans, Inc., a Michigan corporation,

       Plaintiff,

v.                                                                    Case No. 12-13913

Hirsch International Corp., a Delaware                 Honorable Sean F. Cox
corporation,

       Defendant.
_____/

**OPINION & ORDER**
**GRANTING DEFENDANT'S MOTION TO TRANSFER**

In this case, the parties – which are both corporate entities – entered into a contract for the sale of a machine. Thereafter, Plaintiff filed this action, asserting breach of contract, and other claims, against Defendant. The matter is currently before the Court on Defendant's motion asking the Court to either dismiss this case without prejudice or transfer it to a United States District Court in New York, based upon a forum-selection clause in the parties' written contract.

The motion has been fully briefed by the parties. The Court finds that the issues have been adequately presented in the parties' briefs and that oral argument would not significantly aid the decisional process. *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. The Court therefore orders that the motion will be decided upon the briefs.

For the reasons below, the Court finds that the forum selection clause is enforceable. After consideration of the forum selection clause, and other appropriate factors, the Court shall GRANT Defendant's motion and transfer this action, pursuant to 28 U.S.C. § 1404(a), to the Central Islip Division of the United States District Court for the Eastern District of New York.

1

# BACKGROUND

Plaintiff Versatrans, Inc. ("Plaintiff" or "Versatrans") filed suit against Defendant Hirsch International Corp. ("Defendant" or "Hirsch") in Wayne County Circuit Court on August 1, 2012.  Defendant removed the matter to this Court, based upon diversity jurisdiction, on September 5, 2012.

**Plaintiff's Complaint**

Plaintiff's Complaint asserts the following claims against Defendant: "Breach of Contract" (Count I); "Breach of Implied Contract / Unjust Enrichment" (Count II); "Fraud and Misrepresentation" (Count III); "Silent Fraud / Innocent Misrepresentation" (Count IV); "Promissory Estoppel" (Count V); "Breach of Warranty" (Count VI); "Breach of Implied Warranty of Merchantability" (Count VII); "Implied Warranty of Fitness for Particular Purpose" (Count VIII); and "Recission of Contract / Declaratory Judgment" (Count IX).

All of the claims are related to Plaintiff's purchase of a machine from Defendant. Plaintiff's complaint alleges that "[o]n or about June 17, 2011, Versatrans contracted with and purchased" the machine from Defendant.  (Compl. at ¶ 5).  Plaintiff's complaint references a written sales contract, but alleges that "it was never formally executed between the parties as it was never executed by any agent of Hirsch, and therefore is unenforceable and not binding on either party" under the terms of the sales contract.  (*Id.* at ¶ 7).  Yet Plaintiff asserts a breach of contract claim, in addition to a claim based upon an implied contract theory.

Plaintiff's complaint alleges that it was induced into purchasing the machine "based on Hirsch's representations and advertising regarding the capabilities and functionality of the Machine."  (*Id.* at ¶ 9).  It alleges that "Hirsch falsely represented material facts regarding the

2

type of Machine that would be provided to Versatrans, the functionality and performance capabilities of the Machine, the specifications of the Machine being purchased, and the nature of the sales contract Versatrans was required to sign, in addition to other various false representations, promises and inducements to mislead Versatrans and induce it into purchasing the Machine."  (*Id*. at ¶ 20).

Plaintiff's complaint does not include any allegations relating to a forum selection clause, or any allegations relating to Defendant's standard terms and conditions, or any specific representations made by Defendant's sales representatives with respect to the written sales contract.

**Defendant's Motion**

On September 17, 2012, Defendant filed a "Motion To Dismiss Per Fed. R. Civ. P. 12)b)(6) Or 12(b)93), Or, Alternatively, Transfer Per 28 USC § 1404(a)."  (Docket Entry No. 2). In this motion, Defendant asserts that the parties entered into a valid and enforceable written contract, which contains a forum selection clause providing that any lawsuit would be filed in New York.  It asks the Court to either dismiss this action or transfer it to New York. Defendant's motion asserts that Plaintiff's apparent challenge to the contract, stated in its complaint, is without merit.  It contends that under the plain and unambiguous terms of the contract, it was not required to provide Plaintiff with a copy of the fully executed contract.  It also contends that it signed the contract within the time required and that the contract is valid and enforceable.

**The One-Page Sales Contract**

Defendant's motion attaches a copy of the one-page written sales contract that is

3

referenced in Plaintiff's Complaint.  Plaintiff's response brief attaches a copy of this same one-page written sales contract and Plaintiff does not dispute that its President, Francisco Viola, signed it on June 17, 2011, and returned it to Defendant on that same date.  (Ex. A to Pl.'s Br.).  The Court will refer to this one-page document as the "Sales Contract."

The Sales Contract specifies the machine to be provided to Plaintiff, the price for the machine, and some other details.  It also includes the following language – just above where Mr. Viola signed as "Accepted By" Versatrans:

> **The terms and conditions on this Sales Contract and the attached Standard Terms and Conditions of Sale (collectively the "Agreement") constitutes a firm offer.  This Agreement shall not be binding upon either party unless executed by both parties here to and delivered to an authorized representative of Hirsch International Corp. within fourteen (14) days from the date of this agreement.  By executing this Sales Contract, you understand and agree that this Sales Contract is subject to the attached Standard Terms and Conditions of Sale.**
>
> **This Sales Contract may be executed in Counterparts.  This Sales Contract may be executed by facsimile signature.**

(*Id.*) (bolding in original).

**Other Contract Documents**

When it removed the matter, Defendant attached Plaintiff's complaint.  It also attached, as Exhibit B to the removal papers, "the fully executed purchase agreement and related and related documents (from Defendant Hirsch's file) which were referenced in the Verified Complaint as not fully executed."  (Docket Entry No. 1 at Pg ID 6).  Defendant's Notice of Removal states that it had attempted to get all the documents filed in the state-court action but it was advised by the court that the "file was empty."  In addition to a copy of the Sales Contract –

signed by both parties and dated June 17, 2011 by both parties – Defendant filed the following
documents: 1) a two-page Hirsch document titled, TERMS & CONDITIONS; 2) a Machine /
Software Location Form, with information regarding Versatrans, including its federal tax ID; 3)
a Michigan Sales and Use Tax Certificate of Exemption form, signed by Mr. Viola on June 17,
2011; 4) a Promissory Note signed by Mr. Viola on June 17, 2011; and 6) a Security Agreement
dated June 17, 2011, and signed by both parties.

The two-page Hirsch Document, titled Terms and Conditions, includes ten paragraphs
that pertain to a variety of subjects such as price, shipping, cancellation, credit and payment,
delivery, warranty, shipping, title insurance, etc. It also contains a paragraph that provides, in
pertinent part:

> The sale by Hirsch International Corp., the "Company" to you will be solely upon
> the terms contained in the attached Sales Contract and the standard terms and
> conditions of sale the "Terms of Sale" set forth herein, which shall supercede any
> conflicting terms and conditions of yours, whether written or oral. Exceptions,
> modifications or alternations to the Sales Contract and any of the Terms of Sale
> must be in writing and signed by you and an authorized representative of the
> Company in order to be binding on the Company. IT IS SPECIFICALLY
> AGREED THAT THE LAW OF THE STATE OF NEW YORK SHALL APPLY
> TO THE SALES CONTRACT AND TERMS OF SALE AND TO ANY AND
> ALL CLAIMS OR ACTIONS ARISING OUT OF THIS AGREEMENT. THE
> PARTIES MUTUALLY CONSENT TO THE JURISDICTION OF THE
> COURTS OF THE STATE OF NEW YORK TO ADJUDICATE SUCH
> CLAIMS OR ACTIONS AND FURTHER AGREE THAT THE VENUE OF
> ANY ACTION OR PROCEEDING COMMENCED BY OR INVOLVING THE
> PARTIES HEREUNDER SHALL BE FIXED IN THE STATE OF NEW YORK
> WITHIN THE COUNTIES OF NASSAU OR SUFFOLK, WHETHER SUCH
> ACTION IS COMMENCED IN STATE OR FEDERAL COURT. No
> representation or warranty of any kind has been made by the Company except as
> set forth in the Sales Contract or Terms of Sale; this agreement conclusively
> supercedes all prior agreements, proposals, writings and negotiations between the
> parties with respect to the subject matter contained herein.

5

(Terms and Conditions at ¶ 1).

**Plaintiff's Response To Defendant's Motion**

      In response to Defendant's motion, Plaintiff continues to assert that the contract is

unenforceable because Defendant did not sign the contract within the time provided, and did not

provide it with a fully executed copy.

      Plaintiff also asserts that Mr. Viola asked Defendant's sales representative if there were

any other terms and conditions (that were not on the one-page Sales Agreement) and that

Defendant's representative told him there were not.  Plaintiff has submitted an Affidavit that

states, in pertinent part:

> 10.    I was repeatedly and specifically informed by Gavin Kidd that "you have
> everything" the [sic] consisted of the parties' contract, that there more
> [sic] no other "terms and conditions" despite the language of the Sales
> Agreement, and that the Sales Agreement needed to be signed
> immediately in order to insure delivery of the machine by August 1, 2011.
>
> . . . .
>
> 14.    As stated above, in the months leading up to the signing of the Sales
> Agreement, at the time the Sales Agreement was signed by me, and even
> after the signing of the Sales Agreement, I had numerous conversations
> with Gavin Kidd, who repeatedly and consistently advised me that there
> were no additional pages to the Sales Agreement, no additional documents
> that I needed to view and no other relevant contract documents.

(Viola Affidavit at ¶ 10 & ¶ 14).  Plaintiff asserts that even if a valid contract was formed, the

forum selection clause is in valid because the inclusion of the clause was the product of fraud.

**Defendant's Reply Brief**

      Defendant's Reply Brief states that the Sales Agreement was signed by both Mr. Viola

and Mr. Kidd on June 17, 2011.  Defendant also asserts that because there is "[n]o claim being

made that the forum selection clause, specifically, was procured by fraud," the provision must be enforced. (Def.'s Reply at 4).

Defendant attaches an Affidavit from Mr. Kidd. Mr. Kidd states that he sent Mr. Viola the entire packet of contract documents, including the Sales Agreement and Hirsch's standard Terms and Conditions, prior to June 17, 2011. He states that on June 17, 2011, Mr. Viola signed the Sales Contract, and the other contract documents that required his signature, and transmitted them to Mr. Kidd on June 17, 2011. Mr. Kidd states that the he then signed and dated the Sales Contract. It is dated, in handwriting next to Mr. Kidd's signature, June 17, 2011.

Defendant also asserts that if there is any fraud here, it is by Mr. Viola. Defendant notes that Mr. Viola's statement in his Affidavit that he has told there were no other contract documents is belied by the other contract documents that Mr. Viola signed on June 27, 2011, and attached to his response brief.

## ANALYSIS

### I. Federal Law Applies In This Diversity Action.

The Court must first decide what law applies in this diversity action. The Sixth Circuit has ruled that in a diversity suit such as this, "the enforceability of the forum selection clause is governed by *federal law*." *Wong v. Partygaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009) (emphasis added). Because this Court is within the Sixth Circuit, it follows Sixth Circuit law.

### II. Defendant's Motion To Dismiss Should Be Considered Under Fed. R. Civ. P. 12(b)(6) – Not Fed. R. Civ. P. 12(b)(3). Or, Alternatively, This Court May Consider Whether To Transfer This Action To New York, Pursuant to 28 U.S.C. § 1404(a).

Defendant's motion includes alternative requests, asking the Court to: 1) dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) because, under the *Phillips* test, the

7

forum clause is enforceable (pages 3-10 of Def.'s Br.); 2) dismiss Plaintiff's complaint pursuant

to Fed. R. Civ. P. 12(b)(6) for failure to state a claim (pages 10-13 of Def.'s Br.); 3) dismiss

Plaintiff's complaint for lack of venue under Fed. R. Civ. P. (b)(3) (pages 12-13 of Def.'s Br.);

or 4) transfer the action to the federal district court in New York, pursuant to 28 U.S.C. §

1404(a) (pages 14-17).  This is likely because there has been some confusion in federal courts as

to whether a motion to dismiss based on the existence of a forum selection clause should be

treated a motion under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, a motion

under Fed. R. Civ. P. (b)(3) for improper venue, or a motion under Fed. R. Civ. P. (b)(6) for

failure to state a claim.  *See Lanier v. Syncreon Holdings, Ltd.*, 2012 WL 3475680 *3 (E.D.

Mich. Aug. 14, 2012).

      As the district court noted in *Lanier*, in *Wong*, the Sixth Circuit ruled that a forum

selection clause should not be enforced through dismissal for improper venue under Fed. R. Civ.

P. 12(b)(3).  *Id.* (Citing *Wong v. Partygaming Ltd.*, 589 F.3d 821, 830 (6th Cir. 2009)).  Thus,

under *Wong*, any motion to dismiss should be considered under Fed. R. Civ. P. 12(b)(6) – not

12(b)(3).  *Wong*, 589 F.3d at 830; *Lanier, supra*, at * 3; *Conte v. Ascension Health*, 2011 WL

4506623 at * 1 n.1 (E.D. Mich. 2011).

      Or, alternatively, the Court may consider whether to transfer this action to New York,

pursuant to 28 U.S.C. § 1404(a).

## III.    The Court Rejects Plaintiff's Argument That No Forum Selection Can Be Enforced Because No Valid Written Contract Exists Between The Parties.

      Defendant's motion asserts that the parties have a valid and enforceable contract, which

includes a forum selection clause, and the Court should either dismiss this action or transfer it to

New York.

This case is somewhat unusual in that, in response to Defendant's motion, Plaintiff asserts that: 1) no valid and enforceable written contract exists between the parties (although Plaintiff has brought a breach of contract claim and its complaint alleges only that it signed a written contract; it does not allege a verbal contract); and 2) even if the written contract is valid, the forum selection clause should not be enforced.

Given Plaintiff's position, before determining whether the forum selection clause should be enforced, the Court will determine whether Plaintiff can establish that no valid and enforceable contract exists between the parties.

Both Michigan and New York follow the same general principles as to contract law. Both require clear and unambiguous contract provisions to be enforced as written.

Plaintiff acknowledges that its President signed the Sales Contract and returned it to Defendant on June 16, 2011. Although Plaintiff has asserted a breach of contract claim in this action, Plaintiff contends that the Court should not enforce the forum selection clause in the parties' written contract because "a valid contract was never formed between Versatrans and Hirsch." (Pl.'s Br. at 10). Plaintiff claims that a valid contract was not formed because Hirsch never properly executed the written Sales Contract. Plaintiff bases this argument upon the following language in the Sales Contract:

> **This Agreement shall not be binding upon either party unless executed by both parties here to and delivered to an authorized representative of Hirsch International Corp. within fourteen (14) days from the date of this agreement.**

(Sales Contract, attached as Exhibit A to Pl.'s Response Br.) (bolding in original). Plaintiff asserts that although it signed and returned the Sales Contract to Defendant on June 17, 2011, an

authorized representative of Defendant did not sign it within fourteen days.

In support of its belief that a representative of Defendant did not sign the Sales Contract within fourteen days of June 17, 2011, Plaintiff: 1) states that he was never given a copy of a fully executed Sales Contract; and 2) when Plaintiff's counsel asked Defendant's counsel for a copy of the contract documents, he was sent a copy of the Sales Contract without a signature on it from Defendant's representative.

In response to this argument, Defendant first notes that the contract does not require Plaintiff to receive a fully executed copy of the agreement in order for the contract to be valid.

Second, Defendant asserts that its representative, Mr. Kidd, did, in fact, sign the Sales Contract on June 17, 2011, and therefore it is valid under the terms of the Sales Contract. Defendant has provided an Affidavit from Mr. Kidd in support of that assertion.

Third, Defendant asserts that Plaintiff's argument based on the documents that its New York counsel (Ms. Mastrogiovanni) gave to Plaintiff's counsel is "transparently unserious" because Plaintiff's counsel never asked for a copy of a fully executed agreement, but rather, just requested a copy of the relevant documents. Mr. Kidd's affidavit explains that when Ms. Mastrogiovanni asked him for copies of the documents, Mr. Kidd forwarded her the copies signed only by Mr. Viola because they were the only copies he had quickly available on his computer.

The Court rejects Plaintiff's attempt to avoid the forum selection clause by arguing that no valid and enforceable contract exists between the parties. The contract language does not require Plaintiff to receive a fully executed copy in order for the contract to be valid. And the evidence before the Court indicates that Defendant's representative also signed the Sales

10

Contract on June 17, 2011, which was within the fourteen-day-period required by the contract language at issue.

## IV.    The Court Finds That The Forum Selection Clause Is Enforceable.

"[T]he Supreme Court has announced a federal policy favoring enforcement of forum selection clauses and has held that such clauses 'should control absent a strong showing that [they] should be set aside.'" *Wong*, 589 F.3d at 826 (quoting *Carnival Cruise Lines, Inc., v. Shute*, 499 U.S. 585, 587 (1991) and *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)).  Thus, such clauses are "prima facie valid" and should be enforced "absent some compelling and countervailing reason."  *Id.*

Here, Plaintiff disputes the enforceability of the forum selection that is contained within Hirsch's standard Terms and Conditions, which were incorporated by reference in the Sales Contract.

The enforceability of a forum selection clause is a question of law.  *Shell v. R.W. Sturge, Ltd.*, 55 F.3d 1227, 1229 (6th Cir. 1995).  The Sixth Circuit has held that, when evaluating the enforceability of a forum selection clause, the Court should consider "the following factors: (1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust."  *Wong*, 589 F.3d at 828.

Plaintiff, as the party opposing the forum selection clause, "bears the burden of showing that the clause should not be enforced."  *Id.*  The Court concludes that Plaintiff has not met its burden here.

11

**A.      Whether The Forum Selection Clause Was Obtained By Fraud, Duress, Or Other Unconscionable Means**

"Under the first factor, the party opposing the clause must show fraud in the inclusion of the clause itself."  *Wong*, 589 F.3d at 828.  General claims of fraud – such as those contained in Plaintiff's complaint – "do not suffice to invalidate" a forum selection clause.  *Id*.  This first factor only looks at whether the party opposing the clause can establish fraud in the *inclusion of the forum selection clause itself.  Id*.  So, for example, the Sixth Circuit has "upheld a finding that the inclusion of forum selection clause was fraudulently induced where the party seeking to enforce the clause had affirmatively represented *that disputes would be resolved in a forum different from that dictated by the forum selection clause*."  *Id.* (citing *Great Earth Cos. v. Simons*, 288 F.3d 878 (6th Cir. 2002)) (emphasis added).

Here, Plaintiff's brief[1] asserts that its President, Mr. Viola, was fraudulently induced to sign the Sales Contract because Defendant's sales representative, Mr. Kidd, misrepresented to him that there were no additional "terms and conditions" that would apply to the Sales Contract and there were "no other relevant contract documents."  (Viola Affidavit at ¶¶ 10 & 14).  Plaintiff contends that he never saw Hirsch's standard Terms and Conditions – which consist of two full pages and ten paragraphs, only one paragraph of which is the forum selection clause.

The Court rejects Plaintiff's position for two reasons.  First, this is not a case where the party seeking to enforce the forum clause is alleged to have affirmatively misrepresented that disputes would be resolved in a different forum.  And, Plaintiff is not claiming fraud in the inclusion of the forum selection clause itself.  Rather, Plaintiff is claiming fraud in the inclusion

---

[1]Plaintiff's complaint alleges no such claim.  Plaintiff only raised this in his response brief.

12

of Defendant's entire standard Terms and Conditions – only one of which contains the forum selection clause.  Therefore, the Court finds that Plaintiff has not asserted a claim that it was fraudulently induced to agree to the forum selection clause itself.

Second, even if Defendant's sales representative had misrepresented that there were no standard terms and conditions of sale or any other contract documents, Plaintiff would not be able to establish *reasonable reliance* on such a misrepresentation.

Reasonable or justifiable reliance is an essential element of any fraudulent misrepresentation claim under both Michigan and New York law.  *See, e.g.*, *Nieves v. Bell Indus., Inc.*, 204 Mich.App. 459, 464 (1994); *County of Suffolk v. Long Island Power Authority*, 100 A.D.3d 944, __ N.Y.S.2d __, 2012 WL 5935521 at *4 (November 28, 2012).  Thus, a plaintiff cannot proceed with a fraud claim if its reliance on the alleged misrepresentation was unreasonable.

"Unreasonable reliance includes relying on an alleged misrepresentation that is expressly contradicted in a written contract that the plaintiff reviewed and signed."  *Aron Alan, LLC v. Tanfran, Inc.*, 240 Fed. App'x 678 at 682 (6th Cir. 2007).  That is precisely what we have here.

Mr. Viola alleges that before he signed the Sales Contract, Mr. Kidd orally represented to him that there were no separate terms and conditions, or any other contract documents other than the one-page Sales Contract.  But the one-page Sales Contract that Mr. Viola signed on behalf of Plaintiff expressly contradicted that alleged statement – twice and in bold print:

> **The terms and conditions on this Sales Contract and the attached Standard Terms and Conditions of Sale (collectively the "Agreement") constitutes a firm offer**
> **. . . .**

13

> **By executing this Sales Contract, you understand and agree that this Sales Contract is subject to the attached Standard Terms and Conditions of Sale.**

(Sales Contract, attached as Exhibit A to Pl.'s Response Br.) (bolding in original).  Accordingly, it would be objectively unreasonable for Mr. Viola to rely on Mr. Kidd's alleged oral representation that there were no separate terms and conditions when that statement was expressly contradicted by the written contract that he signed.  This is especially so given that Mr. Viola is the President of Versatrans and is therefore deemed a sophisticated party.

This factor weighs in favor of enforcing the forum selection clause.

### B.     Whether The Designated Forum Would Ineffectively Or Unfairly Handle The Suit

Under the second factor, Plaintiff must show that the federal court in New York "would ineffectively or unfairly handle the suit."  *Wong,* 589 F.3d at 829.

Plaintiff does not assert that the New York forum would be either "ineffective" or "unfair."  Rather, as to this second factor, he simply asserts that "New York has no interest in hearing this case" and asserts that it would be inconvenient for Plaintiff.  But that is not what this factor considers; this factor considers whether the designated forum would be ineffective or unfair.

Thus, consideration of this second factor weighs in favor of enforcing the forum selection clause.

### C.     Whether The Designated Forum Would Be So Seriously Inconvenient Such That Requiring Plaintiff To Bring Suit There Would Be Unjust

With respect to the third and final factor, Plaintiff "must show that enforcement of the

14

clause would be so inconvenient such that its enforcement would be unjust or unreasonable." *Wong,* 589 F.3d at 829. The Sixth Circuit has explained that this factor must be "based on more than mere inconvenience of the party seeking to avoid the clause" and described this as a "heavy burden." *Id.* In *Wong*, the Sixth Circuit found this heavy burden was not met where the plaintiff consumers, who were not sophisticated business entities, would have to litigate their claims overseas.

Here, Plaintiff simply argues that it would be inconvenient for it to litigate its claims in New York as opposed to Michigan. Thus, Plaintiff alleges mere inconvenience, which the Sixth Circuit has stated is insufficient as to this factor.

Accordingly, this third and final factor also weighs in favor of enforcing the forum selection clause. This Court therefore finds that the forum selection clause is enforceable.

Given that conclusion, this Court could dismiss this action without prejudice, pursuant to Fed. R. Civ. P. 12(b)(6), or, alternatively, transfer the action to New York, pursuant to 28 U.S.C. § 1404(a).

## V.   Rather Than Dismiss This Action Without Prejudice, This Court Shall Transfer The Action To New York, Pursuant To 28 U.S.C. § 1404(a).

Section 1404(a) states: "For the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

When determining whether to transfer venue in cases which involve a forum-selection clause, the Supreme Court has stated that the forum-selection clause should not receive "dispositive consideration nor no consideration, but rather the consideration for which Congress provided in § 1401(a)." *Stewart Organization, Inc. v. Ricoh*, 487 U.S. 22, 31 (1988).

15

In *Moses v. Business Card Express, Inc*., 929 F.2d 1131, 1137 (6th Cir. 1991), the Sixth Circuit stated that the forum-selection clause should figure centrally into a district court's calculus, but a district court should also consider the "private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Id.*

Plaintiff's response brief does not address this alternative request (i.e., that the Court transfer the action to New York, pursuant to § 1404(a),  rather than dismiss it pursuant to Fed. R. Civ. P. 12(b)(6)).  Nevertheless, Plaintiff's position can be gleaned from its brief – it asserts that it is Michigan business and that its witnesses and documents, and the Machine, are located in Michigan.

Defendant, on the other hand, is located in New York, where its witnesses and documents are located.

Thus, the existence of the forum-selection clause, as a practical matter, becomes the dispositive factor in this situation and warrants transferring the action.  (*See Flagstar Bank v. Mortgage Loan Specialists*, 2010 WL 3862746 (E.D. Mich. 2010)).

Accordingly, the Court shall transfer this action to the appropriate federal Court in New York.

The parties' briefs, however, did not specify the federal district court to which this case should be transferred if the Court were to deem transfer appropriate.  The Court therefore had the parties submit supplemental briefs on this issue and the parties ultimately agreed that the Central Islip Division of the United States District Court for the Eastern District of New York would be the appropriate court for any transfer.  Accordingly, the Court shall transfer this action to that

16

court.

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Defendant's Motion to Transfer is GRANTED and the Court hereby ORDERS that this action be TRANSFERRED to the Central Islip Division of the United States District Court for the Eastern District of New York.

IT IS SO ORDERED.


S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  March 11, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 11, 2013, by electronic and/or ordinary mail.

S/Jennifer McCoy
Case Manager